**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

RINCHEM COMPANY, LLC,

      Plaintiff,

v.                                 No.

VOLUME LOGISTICS, LLC, and
PETER DANCE,

      Defendants.

<u>**VERIFIED COMPLAINT**</u>

COMES NOW Plaintiff Rinchem Company, LLC ("Rinchem" or "Plaintiff") by and through its attorney of record, Brownstein Hyatt Farber Schreck, LLP, who brings this Verified Complaint against Defendant Volume Logistics, LLC ("Volume") and Defendant Peter Dance ("Dance") (altogether "Defendants"), and states as follows:

**NATURE OF THE ACTION**

1.      Rinchem is a New Mexico-based company founded in 1976. Rinchem is in the business of chemical warehousing, transportation, freight forwarding, and technology for Fortune 500 customers across the semiconductor and electronics, chemical manufacturing, pharma, biotech, aerospace, and defense industries worldwide. In the state of New Mexico alone, Rinchem employs approximately 107 employees.

2.      Defendant Dance used to be one of those employees, serving as the North American Planning Manager for Rinchem. Upon information and belief, he now works in a similar position as its Director of Enterprise Sales and Operations for Volume.

3.      While Dance was working for Rinchem, he agreed to abide by Rinchem's Code of Conduct (the "Code") and its confidentiality policies. After he left Rinchem, Rinchem soon learned that Dance had been engaging in a campaign to harm Rinchem's reputation and hurt its

business by encouraging employees to leave Rinchem and work for competitors, in violation of his duty of loyalty to the company. Rinchem conducted an investigation into Dance's conduct and learned that he had also surreptitiously stole over four gigabytes (which equates to over 1,700 files) of Rinchem's customer and sales information on the eve of his separation from Rinchem and then immediately set upon the task of soliciting Rinchem's customers on behalf of Volume. Rinchem simultaneously began experiencing a sudden loss of business from institutional customers to Volume.

4.    Dance has not returned Rinchem's property despite numerous demands that he and Volume do so. Moreover, Defendants continue to solicit and do business with Rinchem's customers while Dance unlawfully remains in possession of highly sensitive information about those customers, to the harm of Rinchem and benefit of Defendants.

## PARTIES

5.    Plaintiff Rinchem Company, LLC, is a New Mexico company headquartered at 5131 Masthead St NE, Albuquerque, NM 87109.

6.    Defendant Peter Dance is a former employee of Rinchem and an individual residing in the State of New Mexico. Upon information and belief, he can be served with process at 800 Ocate Meadows Drive NE, Rio Rancho, NM 87144.

7.    Defendant Volume Logistics LLC is a Georgia company with its principal place of business at 2415 Old Cornelia Highway Suite G, Gainesville, GA, 30507. Like Rinchem, Volume provides logistics services for companies transporting chemical, gas, and hazardous materials throughout the United States (including New Mexico) and globally.

2

## JURISDICTION AND VENUE

8.      This Court has federal question jurisdiction based on 28 U.S.C. § 1331 because this action alleges a violation of the Defend Trade Secrets Act. *See* 18 U.S.C. § 1836(c) ("The district courts of the United States shall have original jurisdiction of civil actions brought under this section."). This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

9.      This Court has personal jurisdiction over Dance as he is a resident of the state of New Mexico.

10.     This Court has personal jurisdiction over Volume pursuant to the New Mexico Long-Arm Statute. *See* N.M. Stat. Ann. § 38-1-16. As alleged *infra*, Dance removed Rinchem's confidential information and trade secrets from its secured Citrix digital cloud workplace upon his resignation from Rinchem while in the state of New Mexico. Dance is now an employee of Volume and, upon information and belief, took the confidential information and trade secrets for the benefit, and on behalf, of Volume. Dance has utilized Rinchem's confidential information and trade secrets while working for Volume in the state of New Mexico. The stolen information includes confidential information for Rinchem's entire customer base located in New Mexico (and other locations).

11.     Defendants have purposefully directed their business and tortious activities at New Mexico by both employing a New Mexico resident in a highly placed sales and operations position and providing logistics and transportation services for customers throughout New Mexico. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 351–53 (2021) (holding that a company's activities in a state created a sufficient connection to plaintiff's allegations to support specific personal jurisdiction.). This conduct has given rise to and is

directly related to the claims set forth herein. Moreover, this Court has general jurisdiction over Volume because its contacts with New Mexico are so systematic and continuous that the maintenance of this action is reasonable and does not offend traditional notions of fair play and substantial justice. Upon information and belief, Defendants have had systemic and regular activity in New Mexico, including the solicitation and acceptance of business in New Mexico by using Rinchem's wrongfully misappropriated trade secrets and confidential information and otherwise. Defendants' business and tortious activities in New Mexico have resulted in significant economic and non-economic damage to Rinchem (which is headquartered and incorporated in New Mexico).

12.     Venue is properly placed in this District pursuant to 28 U.S.C. § 1391(b) as Dance is a resident of New Mexico, and, as set forth above, a substantial part of the events or omissions giving rise to Rinchem's claims occurred in New Mexico.

## FACTS

A.    Rinchem Company, LLC Has Been in the Business of Transportation Safety Since 1976.

13.     Rinchem is headquartered in Albuquerque, New Mexico and provides logistics solutions for the transport of primarily hazardous chemicals worldwide. Rinchem's current service offerings include warehousing, transportation, freight forwarding, and Chem-Star (a warehousing and transportation management system that enables inventory visibility across Rinchem's network of warehouses). Rinchem currently operates in 31 locations throughout the United States, Asia, Israel, and employs over 100 New Mexicans alone.

B.    Defendant Dance Worked for Rinchem from February 26, 2018 until September 23, 2024.

14.     Dance was an employee of Rinchem from February 26, 2018 to September 23, 2024, and last served in the role of North American Planning Manager. Some of his primary

responsibilities included: ownership of process & accuracy improvement in Rinchem's customer service center; subject-matter expert on Rinchem Chem-Star transportation management system for domestic transportation; ownership of system accuracy and full utilization of Rinchem's TMS system within the domestic transportation group; management of the day-to-day brokerage team that oversees the outsourcing of On-the-Road & Rail operations in Rinchem' s North America operations within the Transportation line of business; ensure contracted carriers comply with shipping requirements and operate in compliance with regulations while meeting Rinchem and customer expectations; carrier management; internal and external customer interaction; operational customer-facing duties; and maintenance of solid relationships with customers in collaboration with the Rinchem business development team as the transportation subject-matter expert for domestic logistics. Dance also managed all customer carrier pricing and played a key role in establishing pricing for customers.

15.    While working for Rinchem, Dance agreed to abide by and signed Rinchem's Code as a condition of his continuing employment. The Code contains a limited non-competition restriction during the term of employment, as follows:

### 3.3. COMPETING AGAINST RINCHEM

Employees should be careful to avoid activities that conflict with Rinchem's business interests. You may not commercially market or develop services in competition with Rinchem's current or potential offerings. Such activities are "commercial" if you receive or expect to receive direct or indirect remuneration of any kind.

16.    The Code contains rules regarding Rinchem's property (including its computer systems):

### 3.7 WE PROTECT OUR ASSETS

Rinchem assets are to be utilized solely for legitimate business purposes and should not be exploited for personal gain by any employee. Incidents of damage, theft,

misuse, or wastage of company assets negatively impact Rinchem stakeholders and the company's operational and financial performance.… It's important to note that the use of company computers, data, and systems must adhere to Rinchem's IT security policies.

*** 

17.    The Code sets forth robust protections as to Rinchem's data and confidential information, as follows:

### 3.8 WE PROTECT DATA AND CONFIDENTIAL INFORMATION

Rinchem attributes part of its success to the confidential and proprietary information it develops and utilizes. Consequently, we refrain from sharing confidential information unless there is a legitimate business justification, accompanied by the signing of a non-disclosure or confidentiality agreement with Rinchem. Our obligation to securely safeguard confidential and proprietary information persists even after departure from the company.

Furthermore, we consistently adhere to relevant laws enacted to safeguard confidential information. Confidential or proprietary company information encompasses data owned by Rinchem that is not publicly available or has been deemed confidential through agreement. Additionally, "proprietary" information holds significant business value and may include formulas, methods, devices, pricing details, customer information, strategies, or plans—elements vital to our business success.

Exercise caution to prevent the inadvertent disclosure of proprietary information. Never engage in discussions about proprietary information with unauthorized individuals, as designated by Rinchem's confidentiality policies.

***

Upon cessation of employment with Rinchem for any reason, it is imperative to return all Rinchem property, including documents, media, and devices containing Rinchem proprietary information. Furthermore, you are prohibited from disclosing or utilizing Rinchem proprietary information, including confidential details, after leaving the company.

***

18.    The Code required Dance to comply with Rinchem's computer security policies:

### 3.9 WE FOLLOW COMPANY'S COMPUTER SECURITY GUIDELINES

As a Rinchem employee, you must follow all of the company's computer security guidelines, particularly with regard to creating safe passwords and using them effectively (including not allowing others to use your password), as well as using proper precautions in emailing confidential or proprietary information to a third

6

party. You are responsible for following the Rinchem IT security policies and procedures that apply to your role.

These security obligations also apply to confidential and proprietary information that customers, suppliers and others entrust to Rinchem. We never leave confidential or proprietary information unsecured nor do we dispose of it improperly, such as in a public trash receptacle.

***

19.     Dance also agreed to abide by Rinchem's Employee Handbook, which contains

the following provisions as to confidential information:

As a part of its contracts with most customers, Rinchem has committed to keep its knowledge about those customers and their businesses confidential and not to use it for any purpose for which it was not intended. As an employee of Rinchem you are hereby notified of this commitment and your legal obligation to personally maintain the same level of confidentiality about the business of our customers and their identities. Violation of this policy during employment at Rinchem shall result in immediate termination. Any disclosure of confidential information that causes detriment to Rinchem may subject the employee to legal action and other financial claims.

Certain trade secrets or other confidential information of Rinchem may be disclosed during the course of employment; which trade secrets may consist of but are not limited to:

- Technical information: Research methods and projects, inventions, processes, procedures, formulas, computer programs, machines, and methods.
- Business information: Marketing information, productions, sales systems or plans, price data, standard operating procedures, supply sources, and customer lists.
- Using customers' names in advertising without their written approval.
- Communicating information about any of our customers' problems to anyone outside of Rinchem when such communication includes the identity of the customer.
- Communicating any information designated as confidential to anyone who does not have a need to know that information.
- Communicating to anyone outside of Rinchem's employ, or to anyone who does not have a need to know, Rinchem financial information, strategies or other proprietary data.
- Other confidential information: including employee information, such as, social security numbers, salaries of others, addresses, etc.

***

Employees will not during, and/or after the termination of employment with Rinchem, or, at any future time; use information obtained for themselves or others, or, disclose or divulge any confidential information or trade secrets, or any other unauthorized data of Rinchem as well as the companies in which Rinchem does business, doing so will be in violation of this policy.

Upon termination of employment with Rinchem:

- Return of all documents relating to Rinchem or any other company doing business with Rinchem, including, but not limited to: manuals, reports, computer programs, customer lists, correspondence, drawings/blueprints, standard operating instructions or work instructions, any other confidential materials, and any and all copies in any way obtained by the employee during employment with Rinchem.
- Rinchem may notify any prospective or future employer to whom the employee may have applied or have been employed by of the existence of this policy.
- This policy shall be binding upon the employee, their personal representative, and/or successor of interest.

Employees are also hereby made aware that their obligation to maintain such information as confidential does not end with their employment at Rinchem, but continues indefinitely thereafter.

20.    While employed with Rinchem, Dance also completed annual trainings on the necessity of protecting Rinchem's and its customers' intellectual property and confidential information.

21.    On February 8, 2022, Dance entered into a Transaction Bonus Agreement with Rinchem, through which Rinchem provided him with a $60,000 discretionary bonus in connection with a significant acquisition event. In exchange for the transaction bonus, Dance agreed in part to continue to abide by all of his confidentiality obligations to the Company during the term of his employment, among others.

22.    Rinchem considers the confidential information and trade secrets protected under the Code and by law to include, but not be limited to, the following categories of information: Rinchem's customer lists; Rinchem's proprietary processes; information about technical

processes; cost and pricing information unique to Rinchem and not generally known (including pricing; profit margins; production costs; pricing concessions; promotional discounts; advertising allowances; volume rebates; marketing concessions; payment terms; and rebate incentives; marketing and advertising plans, techniques, and strategies); information regarding Rinchem's business relationships with its suppliers; information regarding Rinchem's supply chain; and Rinchem's strategic business plan.

C.    <u>Defendant Dance's Illicit Theft of Rinchem's Confidential Information and Sabotage.</u>

23.    Dance tendered his resignation to Rinchem on or around September 9, 2024. Unbeknownst to Rinchem, on that same day, Dance improperly downloaded approximately four gigabytes of data (over 1,700 files) from Rinchem's secured Citrix digital workspace onto a personal external storage device. Upon information and belief, Dance had no legitimate business purpose in doing so.

24.    Dance departed Rinchem on September 23, 2024, on what Rinchem believed to be positive terms, as he had been a valued employee at the company for six years. Rinchem even permitted Dance to retain the mobile phone that Rinchem provided him for work purposes.

25.    Rinchem did not learn of the theft of its confidential information until after Dance's last day at the company, when it became concerned by reports from employees and customers that Dance was soliciting business away from Rinchem.

26.    Rinchem subsequently conducted an investigation into the breadth of Dance's conduct during the final months of his employment. Rinchem discovered that, while he was working for Rinchem, he told other Rinchem employees the following, in violation of his duty of loyalty to the company:

- "Wait until they [Rinchem] see what I put in that contract," referring to contract negotiations he was participating in on behalf of Rinchem, implying that he

intentionally included terms unfavorable to Rinchem.

- He was pleased he was allowed to keep his Rinchem phone, and planned to take advantage of customer information contained on the phone to harm Rinchem.

- He anticipated several longstanding customer accounts to have a very short shelf-life after his departure from Rinchem. There was very strong insinuation that he would be pursuing them from his new company.

- He actively encouraged these employees to pursue employment outside of Rinchem.

27.    Rinchem then reviewed Dance's computer activity and learned of the file theft. A sampling of the names of some of the stolen files include:

- Rinchem Managed Freight - Movements by Month.xlsx
- Freight Costs - Summary (Aug 2024).xlsx
- Rinchem Direct Shipping Analysis (Fulls & Empties).xlsx
- Roles & Responsibilities & Process Flow.xlsx
- New ISO Rate Analysis (AZ to OR).xlsx
- Rinchem Freight Lanes.xlsx
- TOK Volume Analysis .xlsx
- TOK US Freight Proforma (Internal Only).xlsx

28.    These stolen files contain material falling into the following categories of confidential data (among others):

- Proforma documents marked as Internal Only for customers;
- Request for Quote ("RFQ") response documents sent to customers;
- Financial analyses of various transportation, freight forwarding, and warehousing business segments with all pricing and costing data; and
- Internal process documents.

Dance appears to have gone through the trouble of creating .zip files to group multiple files together for easier upload, download, and access.

29.    Between September 9 and 23, 2024 while Dance was besmirching Rinchem to other employees and customers and stealing its confidential information, Rinchem paid Dance $8,044.01 in wages.

30.    Since November 6, 2024, Rinchem has sent numerous demand letters to Dance

asking for the return of its confidential information and the work phone he was allowed to retain. Rinchem has yet to be provided with this material, or a satisfactory answer as to what has happened to the thumb drive, its confidential information, or the phone.

31.    Rinchem continues to investigate the actions of Dance and learn troubling information, all while being harmed by Defendants, as set forth in more detail below.

D.    <u>Defendants Have Engaged and Continue to Engage in Unlawfully Competitive Conduct.</u>

32.    Dance now works as the Director of Enterprise Sales and Operations for Volume, a direct competitor of Rinchem. Upon information and belief, all of the unlawful conduct perpetrated by Dance was for the benefit of Volume.

33.    Upon information and belief, since going to work for Volume and retaining Rinchem's confidential information and trade secrets, the following Rinchem customers have been solicited by and/or done business with Volume through Dance in lieu of doing business with Rinchem: Tokyo Ohka Kogyo America ("TOK"), FujiFilm Entities (FEUS, FujiFilm Ultra Pure Solutions, FEUP, FujiFilm USA), and several other customers ("Solicited Customers").

34.    The impact of Defendants' actions has already been significant. From November, 2024 through the filing date, Rinchem suffered a 20% revenue decline of approximately $570,000 related to TOK alone. Across various accounts, the total losses have already exceeded $700,000. These losses are directly attributable to Defendants' wrongful actions.

35.    Rinchem is diligently mitigating its damages, but Defendants continue to solicit from and do work for Rinchem's customer base, all while Dance remains unlawfully in possession of highly sensitive and commercially valuable confidential information and trade secrets of Rinchem directly related to those same customers.

## CAUSES OF ACTION

### COUNT I
### (Violation of the Defend Trade Secrets Act 18 U.S.C. § 1832 – Both Defendants)

36.     Plaintiff incorporates herein by reference all other paragraphs of this Complaint as if those allegations were set out explicitly herein.

37.     Plaintiff owns the trade secrets it has developed over the course of pioneering its unique business model within the hazardous chemicals logistics industry, as well as establishing and maintaining goodwill and longstanding business relationships in its industry. These trade secrets are contained within the files listed in Attachment A.

38.     This information is not readily ascertainable or generally known in the industry and gives Plaintiff an economic advantage over its competitors.

39.     The trade secrets which Plaintiff seeks to protect include processes, procedures, confidential business and financial information, information related to prospective and current customers, clients, and vendors, and documents related to the know-how gained from Rinchem's experience in the industry. This information is secret and of great value to Plaintiff.

40.     Plaintiff has engaged in reasonable efforts to maintain the confidentiality of the subject information. In addition to storing this information on a password-protected and restricted network using Cisco IronPort, Plaintiff has also sought to protect its confidential nature by limiting its employees' use of the information through confidentiality policies and agreements prohibiting the disclosure of such information to third parties (such as those contained in the Code and Data Loss Prevention policies in Office 365). Rinchem further engages dark web monitoring services to continuously scan the dark web for any signs of compromised company data; utilizes Arctic Wolf Managed Detection and Response for continuous monitoring, threat detection, and incident response to security threats; applies user access management best

practices; ensures the physical security of spaces containing sensitive data; conducts ongoing internal audits of its record system activity to identify suspicious log-ins, file accesses, and security incidents; and has a detailed incident response plan in the event of a breach. All of these measures are intended to protect Rinchem's information from unauthorized use and theft.

41.    Plaintiff's confidential and proprietary information and trade secrets as described in Paragraphs 34–36 constitute trade secrets under the Defend Trade Secrets Act.

42.    In his capacity as a highly placed sales and operations planner, Dance had access to Plaintiff's confidential information and trade secrets as to all of its customers.

43.    In that capacity, Dance accessed Plaintiff's trade secrets and confidential and proprietary information on September 9, 2024 for the express purpose of stealing that material to benefit himself and Volume. Upon information and belief, he took the entirety of Rinchem's customer database and saved it onto a personal external storage device in violation of Rinchem's Code.

44.    Upon information and belief, Defendants retain Rinchem's trade secret and confidential and proprietary information, including the information downloaded by Dance on the external storage device.

45.    Defendants' ongoing possession of Plaintiff's trade secrets and confidential information coupled with their provision of directly competitive services indicates an actual or threatened wrongful use or disclosure of Plaintiff' trade secrets and confidential and proprietary information.

46.    Defendants have acquired Plaintiff's trade secrets by improper means and have disclosed and/or are using Plaintiff's trade secrets to operate a competing business and steal Plaintiff's customers and take business from Rinchem.

47.     As a direct and proximate result of Defendants' misappropriation of trade secrets, Plaintiff has suffered and will continue to suffer, irreparable harm, as well as damages to be proven at trial.

48.     Defendants actions are willful and malicious, thereby entitling Plaintiff to recover punitive damages and an award of attorneys' fees.

## COUNT II
(Violation of the New Mexico Trade Secrets Act – NMSA § 57-3A-2 et seq. – Both Defendants)

49.     Plaintiff incorporates herein by reference all other paragraphs of this Complaint as if those allegations were set out explicitly herein.

50.     Plaintiff owns the trade secrets it has developed over the course of pioneering its unique business model within the hazardous chemicals logistics industry, as well as establishing and maintaining goodwill and longstanding business relationships in its industry. These trade secrets are contained within the files listed in Attachment A.

51.     This information is not readily ascertainable or generally known in the industry and gives Plaintiff an economic advantage over its competitors.

52.     The trade secrets which Plaintiff seeks to protect include processes, procedures, confidential business and financial information, information related to prospective and current customers, clients, and vendors, and documents related to the know-how gained from Rinchem's experience in the industry. This information is secret and of great value to Plaintiff.

53.     Plaintiff has engaged in reasonable efforts to maintain the confidentiality of the subject information. In addition to storing this information on a password-protected and restricted network using Cisco IronPort, Plaintiff has also sought to protect its confidential nature by limiting its employees' use of the information through confidentiality policies and agreements

prohibiting the disclosure of such information to third parties (such as those contained in the Code and Data Loss Prevention policies in Office 365). Rinchem further engages dark web monitoring services to continuously scan the dark web for any signs of compromised company data; utilizes Arctic Wolf Managed Detection and Response for continuous monitoring, threat detection, and incident response to security threats; applies user access management best practices; ensures the physical security of spaces containing sensitive data; conducts ongoing internal audits of its record system activity to identify suspicious log-ins, file accesses, and security incidents; and has a detailed incident response plan in the event of a breach. All of these measures are intended to protect Rinchem's information from unauthorized use and theft.

54.     Plaintiff's confidential and proprietary information and trade secrets as described in Paragraphs 47–49 constitute trade secrets under the Defend Trade Secrets Act.

55.     In his capacity as a highly placed sales and operations planner, Dance had access to Plaintiff's confidential information and trade secrets as to all of its customers.

56.     In that capacity, Dance accessed Plaintiff's trade secrets and confidential and proprietary information on September 9, 2024 for the express purpose of stealing that material to benefit himself and Volume. Upon information and belief, he took the entirety of Rinchem's customer database and saved it onto a personal external storage device in violation of Rinchem's Code.

57.     Upon information and belief, Dance accessed the external storage device to solicit and do business on behalf of Volume with Rinchem's customers, including TOK and Fuji.

58.     Upon information and belief, Defendants retain Rinchem's trade secret and confidential and proprietary information, including the information downloaded by Dance on the external storage device.

59.    Defendants' ongoing possession of Plaintiff's trade secrets and confidential information coupled with their provision of directly competitive services indicates an actual or threatened wrongful use or disclosure of Plaintiff' trade secrets and confidential and proprietary information.

60.    Defendants have acquired Plaintiff's trade secrets by improper means and have disclosed and/or are using Plaintiff' trade secrets to operate a competing business and steal Plaintiff's customers and take business from Rinchem.

61.    As a direct and proximate result of Defendants' misappropriation of trade secrets, Plaintiff has suffered and will continue to suffer, irreparable harm, as well as damages to be proven at trial.

62.    Defendants actions are willful and malicious, thereby entitling Plaintiff to recover punitive damages and an award of attorneys' fees.

**COUNT III**
(Intentional Interference with Existing and Prospective Contractual Relations – Both Defendants)

63.    Plaintiff incorporates herein by reference all other paragraphs of this Complaint as if those allegations were set out explicitly herein.

64.    Rinchem had a continuing and customary business relationship with the Solicited Customers prior to Defendants' solicitation of the same.

65.    Defendants were aware of Rinchem's business relationship with the Solicited Customers.

66.    Upon information and belief, Dance was hired by Volume after he made promises he would be able to bring the business of the Solicited Customers over to Volume.

67.    Defendants intentionally and improperly interfered with Rinchem's business relationships with the Solicited Customers and others by soliciting them to do business with Volume while unlawfully possessing and misappropriating Rinchem's confidential and proprietary information and trade secrets to gain an unfair competitive advantage with those customers and cause harm to Plaintiff.

68.    Upon information and belief, Defendants used wrongful means to interfere with Rinchem's business relationships.

69.    Defendants' actions induced or otherwise caused TOK and Fuji not to enter into or continue existing and prospective contractual relations with Rinchem and/or prevented Rinchem from acquiring or continuing its existing and prospective contractual relations with the other Solicited Customers.

70.    Defendants' tortious conduct is ongoing as Defendants aim to take more business from Rinchem.

71.    As a direct result of Defendants' wrongdoing, Rinchem has been damaged in an amount to be determined at trial, of no less than $700,000, but which cannot be compensated by money alone.

72.    Defendants' actions were committed maliciously, willfully, recklessly, wantonly, fraudulently, and/or in bad faith. Accordingly, Plaintiff is entitled to recover actual and punitive damages in an amount to be determined at trial.

**COUNT IV**
(Breach of the Duty of Loyalty – Against Defendant Dance)

73.    Plaintiff incorporates herein by reference all other paragraphs of this Complaint as if those allegations were set out explicitly herein.

74.     While Dance was employed by Rinchem he was acting as a fiduciary of the company.

75.     Under New Mexico law, the employment relationship is one of trust and confidence and places upon the employee a duty to use his best efforts on behalf of his employer.

76.     As such, Dance had a duty of undivided and unselfish loyalty to Rinchem to not engage in disloyal acts in anticipation of future competition.

77.     In making arrangements to compete on behalf of Volume, Dance utilized Rinchem's confidential information and trade secrets obtained in the course and scope of his employment with Rinchem, in violation of his duty of loyalty.

78.     During the period that Dance was disloyal, Rinchem remunerated at least $8,044.01 to him in wages.

79.     In addition, upon information and belief, Dance solicited Rinchem's customers to do business for Volume before the end of his employment, in breach of his duty of loyalty.

80.     Dance also encouraged Rinchem employees to leave Rinchem and harmed Rinchem in contractual negotiations, all while he was employed with Rinchem, in violation of his duty of loyalty.

81.     As a result of Dance's breaches, Rinchem has been damaged through the loss of its customers, business, and goodwill, and damage to its reputation, in an amount to be determined at trial.

82.     Dance's actions were committed maliciously, willfully, recklessly, wantonly, fraudulently, and/or in bad faith. Accordingly, Plaintiff is entitled to recover actual and punitive damages in an amount to be determined at trial.

**COUNT V**

(<u>Aiding and Abetting Breach of Duty of Loyalty – Defendant Volume</u>)

83.    Plaintiff incorporates herein by reference all other paragraphs of this Complaint as if those allegations were set out explicitly herein.

84.    While Dance was employed by Rinchem he was acting as a fiduciary of the company.

85.    Under New Mexico law, the employment relationship is one of trust and confidence and places upon the employee a duty to use his best efforts on behalf of his employer.

86.    As such, Dance had a duty of undivided and unselfish loyalty to Rinchem to not engage in disloyal acts in anticipation of future competition.

87.    In making arrangements to compete on behalf of Volume, Dance utilized Rinchem's confidential information and trade secrets obtained in the course and scope of his employment with Rinchem, in violation of his duty of loyalty.

88.    In addition, upon information and belief, Dance solicited Rinchem's customers to do business for Volume before the end of his employment, in breach of his duty of loyalty.

89.    Dance also encouraged Rinchem employees to leave Rinchem and harmed Rinchem in contractual negotiations, all while he was employed with Rinchem, in violation of his duty of loyalty.

90.    Volume had no such duty of loyalty to Rinchem. However, Volume knew or should have known that while Rinchem employed Dance, he had a duty of loyalty to the company.

91.    Upon information and belief, Volume intentionally provided substantial assistance or encouragement to Dance to commit the acts described in Paragraphs 84–86.

92.     As a result of Volume's aid of Dance's breaches of his duty, Rinchem has been damaged through the loss of its customers, business, and goodwill, and damage to its reputation, in an amount to be determined at trial.

93.     Volume's actions were committed maliciously, willfully, recklessly, wantonly, fraudulently, and/or in bad faith. Accordingly, Plaintiff is entitled to recover actual and punitive damages in an amount to be determined at trial.

## COUNT VI
### (Negligent Training/Supervision – Defendant Volume)

94.     Plaintiff incorporates herein by reference all other paragraphs of this Complaint as if those allegations were set out explicitly herein.

95.     Upon information and belief, since Dance has been employed by Volume, he has tortiously interfered with Rinchem's customer and business relationships and unlawfully competed while being in possession of Rinchem's confidential information and trade secrets.

96.     Upon information and belief, Volume's negligent training and supervision of Dance is the cause of his misconduct.

97.     To wit, Volume failed to exercise reasonable care in training or supervising Dance. Upon information and belief, Volume hired Dance to solicit business from Rinchem (including TOK and Fuji). However, upon information and belief, Volume failed to engage in reasonable best practices to ensure that Dance did not violate his confidentiality obligations or misappropriate trade secrets belonging to Rinchem in doing so.

98.     Volume's negligence proximately caused Plaintiff's damages (which includes the loss of customers and goodwill and harm to its reputation).

99.     As a result of Volume's negligence, Rinchem has been damaged through the loss

of its customers, business, and goodwill, and damage to its reputation, in an amount to be determined at trial.

## COUNT VII
### (Respondeat Superior – Defendant Volume)

100.    Plaintiff incorporates herein by reference all other paragraphs of this Complaint as if those allegations were set out explicitly herein.

101.    Upon information and belief, since Dance has been employed by Volume, he has tortiously interfered with Rinchem's customer and business relationships and unlawfully competed while being in possession of Rinchem's confidential information and trade secrets.

102.    Upon information and belief, Dance has undertaken these tortious acts within the course and scope of his employment with Volume.

103.    Upon information and belief, Dance's solicitation of Rinchem's customers was squarely within his responsibilities as Director of Enterprise Sales and Operations for Volume.

104.    Upon information and belief, Dance engaged in the misconduct with the view of furthering Volume's business interest while in Volume's employ.

105.    Volume's negligence proximately caused Plaintiff's damages (which includes the loss of customers and goodwill and harm to its reputation).

106.    As a result of Dance's conduct undertaken in the course of his employment with Volume, Rinchem has been damaged through the loss of its customers, business, and goodwill, and damage to its reputation, in an amount to be determined at trial.

## COUNT VIII
### (Breach of Contract –Against Defendant Dance)

107.    Plaintiff adopt and incorporate by reference the allegations set forth in the preceding paragraphs above as if completely and fully set forth herein.

108.    The Transaction Agreement constitutes a valid and enforceable agreement between Plaintiff and Dance, entered into, at least in part, for the protection of Plaintiff's interest in and the value of the goodwill, trade secrets, and confidential information of Rinchem.

109.    Plaintiff performed its obligations under the Transaction Agreement, including the provision of $60,000 to Dance to which he was not otherwise entitled.

110.    Pursuant to the "Ongoing Covenants" provision of Exhibit A to the Transaction Agreement, Dance agreed to abide by all continuing obligations of confidentiality to Rinchem during the term of his employment.

111.    However, upon information and belief, Dance breached his contractual obligations by stealing and then continuing to possess, access, and utilize Rinchem's confidential information in violation of the company's Code, Employee Handbook, and other policies around its confidential and proprietary information and trade secrets.

112.    Dance's breaching conduct and other misconduct outlined above has resulted in materially negative impacts to Rinchem's business, and entitles Plaintiff to damages in an amount to be determined at trial.

## COUNT IX
### (Preliminary and Permanent Injunction)

113.    Plaintiff incorporate herein by reference all other paragraphs of this Complaint as if those allegations were set out explicitly herein.

114.    An injunction of Defendants' actions are necessary to prevent irreparable harm to Plaintiff's business, goodwill, and reputation.

115.    Plaintiff is highly likely to succeed on its claims that Defendants are using Plaintiff' trade secrets and confidential and proprietary information, and unlawfully competing.

116.    The balance of the equities clearly favors Plaintiff. Defendants are, upon

information and belief, utilizing Plaintiff' confidential and proprietary information and trade secrets without authorization to do so, to unlawfully steal Rinchem's customers, vendors, and employees, for their own benefit.

117.    If Defendants are permitted to continue their actions unimpeded, Plaintiff will continue to suffer irreparable harm.

118.    In light of the foregoing, Plaintiff have no adequate remedy at law.

119.    Emergency relief and a preliminary injunction will preserve the status quo by preventing Defendants from continuing to breach unequivocal contractual obligations and from using Plaintiff' confidential information and trade secrets to gain an unfair competitive advantage over Plaintiff, pending the outcome of the trial on the merits.

120.    The public interest would not be disserved by the issuance of a temporary restraining order or injunctive relief under these circumstances.

121.    For all of the foregoing, Plaintiff is entitled to a temporary restraining order and a preliminary and permanent injunction:

    i.   Requiring the return all trade secrets and confidential and proprietary information belonging to Plaintiff that is the in the possession or control of Defendants, as well as the Rinchem business phone he retained after his employment ended;

    ii.   Enjoining Defendants from using Plaintiff' trade secrets and confidential and proprietary information (or anything derived from such information) in any way, shape, or form;

    iii.   Enjoining Dance from soliciting or working for any of Rinchem's customers as he will inevitably disclose the confidential information he possesses; and

    iv.   Usurping Plaintiff's actual, expected, and customary business relations and/or opportunities with its customers, vendors, and employees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Rinchem Company, LLC respectfully prays for the following

relief:

1.      Judgment in favor of Plaintiff and against Defendants;

2.      Damages against Defendants to compensate Plaintiff for all general, special,

incidental, and consequential damages incurred or that will be incurred by

Plaintiff as the direct and proximate result of Defendants' conduct, actual loss,

and the unjust enrichment not accounted for in computing the actual loss.

3.      Preliminary and permanent injunctive relief pursuant to Fed. R. Civ. P. 65;

4.      Pre-judgment and post-judgment interest as provided by law;

5.      Treble, exemplary, and punitive damages as provided by law, including pursuant

to 18 U.S.C. § 1836(b)(3)(C), and NMSA § 57-3A-4(B).

6.      Attorney's fees, costs, and expenses of this action as provided for by law,

including pursuant to 18 U.S.C. § 1836(b)(3)(D) and NMSA § 57-3A-5; and

7.      For such other and further relief as the Court deems just and proper.

[*Remainder of page intentionally left blank.*]

Dated this 6th day of March, 2025.

                                   **BROWNSTEIN HYATT FARBER SCHRECK, LLP**

                                   */s/ Kayla Dreyer*
                                   Kayla Dreyer, #49417
                                   675 15th Street, Suite 2900
                                   Denver, Colorado 80202
                                   Telephone: (303) 223-1100
                                   Facsimile: (303) 223-1111
                                   kdreyer@bhfs.com

                                   *Attorney for Plaintiff*

**VERIFICATION**

I, Christopher Sower, declare as follows:

I am the Chief Operating Officer of Rinchem Company, LLC, and am authorized to make this verification on its behalf in the above-entitled action.  I have read the foregoing Verified Complaint and know the contents thereof.  The same is true of my knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 6th day of March, 2025.

/s/ Christopher Sower
Christopher Sower
Chief Operating Officer of
Rinchem Company, LLC